JAMES COOPER *vs.* V. SIMPSON.

June 10, 1889.

Pledge—Contract Requiring Pledgee to Sell.—In the case of a pledge, the parties may by contract make it the duty of the pledgee to sell the property pledged within a specified time.

Same—Absence of such Contract—Duty of Pledgee.—In the absence of some such contract, the duty of the pledgee is to exercise ordinary care, and he is liable only for neglect of such care.

Same—Request to Pledgee to Sell.—The pledgor cannot make it the duty of the pledgee to sell within a specified time, merely by directing or requesting him so to do.

Same—Negligence of Pledgee—Effect on Debt.—Loss or depreciation in value of the thing pledged, through negligence of the pledgee, does not operate to extinguish, *pro tanto*, the debt secured.

Appeal by defendant from an order of the district court for Winona county, *Start*, J., presiding, refusing a new trial.

*Gale & Brown*, for appellant.

*B. F. Heuston*, Jr., for respondent.

GILFILLAN, C. J.   Action for converting a horse.   The defence was that defendant, being indebted to plaintiff upon a promissory note, executed to him a chattel mortgage upon the horse to secure the debt; and that default having been made in the mortgage, defendant, as authorized by the mortgage, took the horse and sold it to satisfy the debt.   Plaintiff replied that the debt had been paid and satisfied before the taking.   The facts on which the claim of satisfaction of the debt was based were that when the debt had been reduced by payments until there was but $137.20 unpaid, plaintiff delivered to defendant wheat tickets—that is, receipts for wheat deposited in an elevator—to the amount of $193\frac{1}{3}$ bushels, as further collateral security for the debt; and plaintiff gave evidence tending to prove that defendant, while he held the tickets, might have sold them for enough, over and above the elevator charges, to satisfy the debt, but that, he not selling, such charges accumulated until they amounted to more than the value of the wheat, so that the tickets were practically of no

value; and also evidence from which the jury might have found that there was an agreement between the parties that defendant should sell the tickets within a specified time, or, if they found no such agreement, might have found that the plaintiff, after making the pledge, directed him to sell within a specified time, and that, if he had sold as so agreed or directed, the tickets would have brought enough to satisfy the debt.

The exceptions argued on this appeal arose on the charge of the court. We state but one, as it presents as fully as all of them the propositions of law upon which, so far as relates to the consequences of defendant's failure to sell, the case was submitted to the jury. At the request of plaintiff the court charged: "If you find that the wheat tickets were delivered and received as collateral security, with contract that Mr. Simpson should sell within two months, or if Cooper afterwards directed Simpson to sell the wheat, his failure to sell as agreed or as directed would operate to discharge the debt it was given to secure, as far as the then market value of the wheat would go." This charge contains three propositions: *First*, that if the value of the thing pledged is lost by failure of duty on the part of the pledgee it operates to the extent of the loss to extinguish the debt; *second*, that if the pledge is made with a contract between the pledgor and pledgee that the latter shall sell within a specified time, it is his duty to do so, and his failure will be a breach of duty for which he will be answerable to the pledgor; *third*, that in case of a pledge, without any contract varying the duties of pledgor and pledgee imposed by law upon that relation, the former may make it the duty of the latter to sell by directing or requesting him to do so. As to the second of these propositions there cannot be any doubt. The parties to a pledging may by agreement vary their common-law powers and duties with respect to the pledge. *Goldsmidt* v. *First Methodist Church*, 25 Minn. 202. Upon the other two the court erred. Of course, a pledgee, may by his misconduct with respect to the thing pledged become liable to the pledgor for loss of the value or depreciation in value in consequence of such misconduct. And ordinarily, at any rate, the fact and amount of the loss so caused may be set up as a counterclaim to an action for the debt secured by the pledge. But, as this is not

an action to recover such debt, that is not the question. The proposition is that loss to the pledgor by misconduct of the pledgee operates *ipso facto* as a satisfaction or extinction of the debt to the extent of the loss. We are referred to several cases in which language is used that suggests the existence of such a rule, but to none in which it was so decided. The only cases we have found in which the point was directly considered are *Taggard* v. *Curtenius*, 15 Wend. 155, and *Hook* v. *White*, 36 Cal. 299, in which it was held that facts analogous to those claimed to exist in this case, while they might be pleaded as a set-off, could not be sustained as a bar to an action for the debt secured. In *Lamberton* v. *Windom*, 12 Minn. 151, (232,) (90 Am. Dec. 301,) the matter was pleaded as a defence and counterclaim, and, as it was enough for the purposes of the case if it could be sustained either as a defence (strictly) or a counterclaim, it was immaterial which it was. And so the court, though it speaks of the matter as a defence, does not consider the question of pleading, nor whether it operated as a satisfaction or extinction of the debt.

Here are two contracts,—one creating the debt of plaintiff to defendant; the other creating the pledge, including, as plaintiff claims, a contract to sell the pledged property within a specified time, and apply the proceeds upon the debt. A right of action may exist on each; one may be a set-off or counterclaim when suit is brought in the other. But, as said in the *Taggard Case*, there is no such thing as setting up one right of action in bar to another right of action. There may exist facts, in a case of pledging, which will estop the pledgee from denying that he has disposed of the pledged property, and received and applied the proceeds upon the debt. But there are no such facts in this case. The first proposition in the charge is therefore erroneous. The third is equally so. It leaves out of account altogether the question of negligence on the part of the pledgee. There might be such a contract between the pledgor and pledgee as would make it the absolute duty of the latter to sell within a specified time, in which case his liability by reason of failure to sell within the time would not depend on negligence. But, in the absence of some such contract, there is no liability of the pledgee to the pledgor except for negligence. The exercise of ordinary care in respect to the

thing pledged is the duty which the law imposes on a pledgee, and for a breach of that duty only does he become liable. After the contract of pledging is made, neither party can, by anything he alone may do, vary the duties or powers attaching to the relation. Some cases hold that a request to sell may be an element in the proof of negligence. But we express no opinion on the point, nor do we express any whether, in the absence of express contract, it is the duty of the pledgee at any time to sell a chattel pledged.

Order reversed.