## HARRIS v. COMMODITY CREDIT CORPORATION.

No. 537.

District Court, E. D. Arkansas, W. D.

Nov. 30, 1942.

Coleman, Mann, McCulloch & Goodwin, of Little Rock, Ark., for plaintiff.

Sam Rorex, U. S. Atty., W. H. Gregory, Asst. U. S. Atty., and Leonard O. Carson, Regional Atty. for the Department of Agriculture, all of Little Rock, Ark., for defendant.

TRIMBLE, District Judge.

The only question involved in this case is whether or not a producer of cotton who obtains a loan on it from the Commodity Credit Corporation, secured by a pledge of the warehouse receipts is still the owner of the cotton so that he can sell and transfer to a third person, subject only to the lien of the Commodity Credit Corporation.

Between September 19, 1939, and March 12, 1940, the producers of the 344 bales of cotton involved in this case sold the cotton to the plaintiff, and executed bills of sale to him which contained orders on the Commodity Credit Corporation, hereinafter referred to as Commodity, to deliver the cotton, and the warehouse receipts therefor, to the plaintiff on the payment by him of the loans with the interest and carrying charges due thereon.

For a long time Commodity recognized the rights of producers to sell their cotton, and honored such sales, but beginning on August 1, 1940, Commodity refused to recognize assignments of cotton by producers

unless they were executed on a special form devised by Commodity, and unless the assignments were presented to Commodity within 15 days from the date of their execution. On July 24, 1941, before the loans on the cotton became due, the plaintiff exhibited to Commodity bills of sale for the 344 bales of cotton purchased by him as set forth above, with orders from the producers for the release of the cotton, and tendered to Commodity "in the manner and medium required by defendant," the full amount of the loans with the interest and carrying charges due thereon.

Commodity refused to release the cotton to the plaintiff, on the ground that the assignments were not executed on the new form devised by it, and were not presented within 15 days from the respective dates of their execution. Commodity still holds possession of the cotton, and no one but the plaintiff is claiming it in this case, except as hereinafter noted.

The notes executed to Commodity by the producers were in form ordinary negotiable promissory notes. They were secured by a pledge of warehouse receipts for the cotton as collateral. The transactions did not differ in any respect from customary cotton loans made by banks on pledges of warehouse receipts.

■ The title to the cotton, and the ownership of it, remained in the producer. He had a perfect right to sell it, and the execution of a bill of sale by him transferred the title to the purchaser, subject only to the lien of Commodity as security for the loan made by it. 21 R.C.L., page 674; Hale on Bailments, page 129; McLeod v. Fourth National Bank of St. Louis, 122 U.S. 528, 7 S.Ct. 1212, 30 L.Ed. 1237; Fitzgerald v. Blocher, 32 Ark. 742, 29 Am.Rep. 3; First National Bank v. Waddell, 74 Ark. 241, 242, 85 S.W. 417, 4 Ann.Cas. 818. The parties to a pledge may change its terms by agreement, but after the contract of pledge is made, neither party can, by anything he alone may do, vary the rights of the other party. 21 R.C.L.Pledge, section 26; People's Bank v. Mendenhall, 154 Ark. 282, 243 S. W. 805; Cooper v. Simpson, 41 Minn. 46, 42 N.W. 601, 4 L.R.A. 194, 16 Am.St.Rep. 667; Minneapolis & N. E. Co. v. Betcher, 42 Minn. 210, 44 N.W. 5. Collateral pledged to secure a particular debt cannot even be held to secure any other indebtedness. State v. Pufahl, 8 Cir., 52 F.2d 116;

Talty v. Friedman's Savings Bank & Trust Co., 93 U.S. 321, 23 L.Ed. 886.

■ The plaintiff acquired a vested right in the 344 bales of cotton on the execution of the bills of sale by the owners to him, and Commodity cannot deprive him of this vested right. John M. Parker Co. v. May, 5 Cir., 128 F.2d 1020, 1023. There is nothing in the Agricultural Adjustment Act which gives it such a power. As said by the Circuit Court of Appeals for the Fifth Circuit, in John M. Parker Co. v. May, supra: "The sale was not illegal because of any public policy of the United States. Neither Section 301 nor 302 of the Agricultural Adjustment Act of 1938, 7 U.S. C.A. §§ 1301, 1302, forbids any producer from selling his produce after obtaining a loan on it. Section 382, 7 U.S.C.A. § 1382, in providing for an extention of loans on 1937/38 cotton expressly recognizes the right of the borrower to sell his cotton. The loans were intended to help producers carry their cotton and to stabalize the market by stopping distress sales, but did not erect any guardianship over borrowers. The right to sell equities in pledged cotton to others was fully recognized by the Commodity Credit Corporation until it devised Form R."

■ It is contended by Commodity that section 5 of the loan agreement gives it the power to refuse to recognize claims by assignees of producers. But this section, by its very terms, applies only to a distribution of the proceeds after a foreclosure of the lien by a sale of the cotton, and there has been no foreclosure.

■ Plaintiff is the owner of the cotton sued for, which is in the possession of the defendant. He is entitled to a judgment requiring the defendant to deliver the cotton to him on the payment of the full amount of loans, with the interest thereon to July 24, 1941, the date of his tender to Commodity, together with the carrying charges up to that date. Mitchell v. Roberts, C.C., 17 F. 776. After the tender by the plaintiff, Commodity held the cotton as trustee for the plaintiff. First National Bank v. Waddell, 74 Ark. 241, 242, 85 S.W. 417, 4 Ann.Cas. 818.

W. M. Manor has filed an intervention in which he claims to be the owner, as producer, of 21 bales of the cotton. But the evidence shows that he sold this cotton to the plaintiff, by duly executed bills of sales. John M. Parker Co. v. May, supra.

At the pretrial conference and now findings of fact and conclusion of law have been made, in conformity with the views expressed here, and a decree being presented it is signed and ordered entered of record.